UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DALE LEESON, 05-B-3098,

        Petitioner,

    -v-                                                09-CV-6409(MAT)
                                                                    **ORDER**

J.T. SMITH, Superintendent,

        Respondent.

---

## I. Introduction

*Pro se* petitioner Dale Leeson ("petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction of Sodomy in the Second Degree (N.Y. Penal L. § 130.45(1) (two counts), Sexual Abuse in the Second Degree (§ 130.60(2)) and Endangering the Welfare of a Child (§ 260.10(1)). Petitioner was convicted following a jury trial before Judge Frederick G. Reed in Ontario County Court, and was subsequently sentenced to two consecutive terms of imprisonment of two and one-third to seven years on each sodomy count, concurrent to one-year terms on the lesser counts.

## II. Factual Background and Procedural History

Petitioner's conviction stems from a series of incidents that occurred between August and October of 2003, wherein petitioner, who was forty years-old, sexually abused the twelve-year-old daughter ("the victim") of a family friend. Petitioner was charged with thirty-two counts of various crimes against the victim,

including sodomy, sexual abuse, attempted rape, and endangering the welfare of a child. See Ontario County Indictment No. 03-10-154 (Resp't Ex. C at 6-16).

Petitioner, a close friend of the victim's mother ("Marie"), frequently visited the home that she shared with her daughter and thirteen year-old son ("Mark"), in Ontario County, New York. According to Marie, petitioner would help the family with household chores and repairs. T. 70, 108, 186.[1] During this time, petitioner befriended the victim, who has learning disabilities and attention deficit hyperactivity disorder. T. 68, 86. Petitioner bought the victim clothing, such as blouses and underwear, and games. T. 74-75, 129, 189-90. Petitioner also had a daughter, Vicki, who was the same age as the victim, and the two girls were friends. T. 71, 109, 188. After Vicki visited with petitioner, he would drive her home to her mother's house, and the victim would accompany petitioner with Marie's permission. T. 72-73, 84, 110, 188, 200.

After petitioner dropped his daughter off, he would then pull off to the side of a rural road near the victim's house, while it was dark outside, and turn off his truck lights. T. 112, 116, 142, 228. Petitioner would then touch the victim's genitals with his hands and mouth, and make her touch his penis with her hands and mouth. He also photographed the victim wearing underwear that he

---

[1] Citations to "T.___" refer to pages of the trial transcript, "S.___" refers to the sentencing transcript, and "H.___" refers to the pre-trial suppression hearing.

2

kept in his glove compartment. T. 112-123, 151, 168, 174-76, 179. According to the victim, petitioner told her that he loved her and wanted to marry her, and that she should not disclose the incidents because he would go to jail. T. 118, 124. Although the petitioner's actions upset the victim, she was too frightened to tell her mother about what was happening. T. 124, 134, 150, 177.

Marie also testified to an incident that occurred at her home in September of 2003, where she observed petitioner lying on a bed with the victim. The victim's shirt was pulled up, and petitioner was kissing her. T. 76. Marie confronted petitioner, and he responded that they were "just sitting there talking and he was trying to put her to sleep." T. 76. She further testified that the victim would regularly sit on petitioner's lap, or put her head in his lap, and petitioner referred to the victim as "his special little girl." T. 77. Marie acknowledged that she had a criminal history involving welfare fraud, endangering the welfare of a child, and selling marijuana. T. 78.

Prior to trial, a combined Huntley/Mapp hearing was held before the county court, during which the prosecution called as a witness Ontario County Sheriff's Investigator James McCaig. Inv. McCaig testified that, upon investigating the allegations of abuse, he went to the home of Dorothy Leeson, petitioner's mother, in the village of Palmyra, New York, to interview the petitioner. When the investigator arrived, only petitioner's mother was at home. He

discussed the allegations with her, explaining that the victim told him that petitioner had purchased thong underwear for her to wear and when she last saw the underwear they were located inside the glove box of a white Toyota pickup truck. Accompanied by Inv. McCaig, Dorothy Leeson went to petitioner's pickup truck, which was parked on her property, and retrieved "two pair of adult sexual-type underwear" from the glove box. Inv. McCaig did not enter petitioner's truck. H. 7-9.

When petitioner met with Inv. McCaig at the Sheriff's office, petitioner waived his <u>Miranda</u> rights and maintained that he had no sexual contact with the victim. H. 12. He acknowledged owning a Polaroid camera, but denied photographing the victim. With regard to the underwear found in his truck, he told the investigator that he bought the underwear for his girlfriend, who was very petite, but would not provide her name or address. H. 13.

In a written decision, the county court held that petitioner's mother validly consented to the search of petitioner's truck, and denied suppression of the items taken from the truck and petitioner's subsequent statements. Resp't Ex. C at 46-47.

The jury found petitioner guilty of two counts of second-degree sodomy, one count of sexual abuse, and one count of endangering the welfare of a child. He was acquitted of the remaining twenty-eight counts in the indictment. T. 448-53. Petitioner was sentenced to aggregate terms of imprisonment

totaling four and two-thirds to fourteen years. A permanent order of protection was issued for the benefit of the victim and her family. S. 8-9.

Through counsel, petitioner appealed his conviction to the Appellate Division, Fourth Department, on the following grounds: (1) the search of petitioner's truck was illegal and his subsequent statements were inadmissible as "fruit of the poisonous tree"; (2) the trial court erred in admitting evidence of uncharged crimes; (3) the verdict was against the weight of the evidence; and (4) the petitioner was improperly penalized at sentencing for exercising his right to trial. Resp't Ex. A. In a *pro se* supplemental brief, petitioner also asserted the following claims: (1) the search of petitioner's truck was unconstitutional; (2) the grand jury evidence was insufficient; (3) the victim's testimony was not corroborated; (4) the verdict was against the weight of the evidence; (5) prosecutorial misconduct; and (6) trial counsel provided ineffective assistance. Resp't Ex. B. The Appellate Division affirmed petitioner's conviction, with two judges dissenting. People v. Leeson, 48 A.D.3d 1294 (4th Dept. 2008). In the majority opinion, the Appellate Division found that the county court had properly declined to suppress the evidence seized from petitioner's pickup truck and his subsequent statements, and further held that he was not denied a fair trial when the prosecution was permitted to present testimony "that he committed

similar acts with the victim in another county during the same time frame as that alleged in the indictment herein." Leeson, 48 A.D.3d at 1295. In dissent, two justices opined that the evidence of his uncharged crimes was admitted solely to prove propensity and that the error was not harmless. Id. at 1296.

By letter, petitioner's counsel forwarded the briefs to the New York Court of Appeals, arguing that the dissenting justices had correctly concluded that the uncharged crime evidence was not admissible. Resp't Ex. F. Leave to appeal was granted, and petitioner subsequently filed an appeal with the New York Court of Appeals on the grounds that the trial court erred in admitting evidence of uncharged crimes, and that the search of petitioner's truck was unconstitutional. Resp't Ex. G, H. The New York Court of Appeals thereafter unanimously affirmed the conviction. People v. Leeson, 12 N.Y.3d 823 (2009) (Resp't Ex. L).

Petitioner then filed a timely *pro se* petition for writ of habeas corpus in this Court, arguing that: (1) the search of his truck was unconstitutional; (2) the verdict was against the weight of the evidence; (3) the verdict was repugnant; (4) the prosecution failed to disclose Brady material; and (5) the trial court erred in admitting evidence of uncharged crimes. Petition ("Pet.") ¶ 22(A)-(E).

For the reasons that follow, petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

    **A.    General Principles Applicable to Federal Habeas Review**

        **1.    Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

        **2.    Exhaustion Requirement and Procedural Bar**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Att'y General, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to

protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been fairly presented to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir.2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice, i.e., that the petitioner is actually innocent. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

**B.    Merits of the Petition**

    **1.    Petitioner's Fourth Amendment Claim is Barred by the Doctrine of <u>Stone v. Powell</u>, 428 U.S. 465 (1976).**

Petitioner first contends that the warrantless search of his pickup truck violated the Fourth Amendment. As he did on appeal, petitioner argues that petitioner's mother had no apparent authority to consent to the search of the vehicle, and the seizure of evidence from the truck and the admissions by petitioner following the search constituted "fruit of the poisonous tree." Pet. ¶ 22(A).

The Appellate Division found that the county court properly declined to suppress the evidence recovered from petitioner's truck and petitioner's subsequent statements. <u>Leeson</u>, 48 A.D.3d at 1295. Likewise, the New York Court of Appeals held:

> [E]ven assuming that the initial, warrantless search of defendant's pickup truck was unlawful, the error was harmless. The only physical evidence recovered during this search, confined to the glove compartment, was panties. The testimony of the victim and her mother independently established that the victim was often alone with defendant in the pickup truck, and that he bought her panties. There is no "reasonable possibility that the . . . [error] might have contributed to the conviction."

<u>Leeson</u>, 12 N.Y.3d at 827 (quoting <u>People v Crimmins</u>, 36 N.Y.2d 230, 241 (1975), internal quotation omitted).

The respondent argues that petitioner's Fourth Amendment claim provides no basis for habeas relief.

In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976) (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided *the opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir.1977) (*en banc*), cert. denied, 434 U.S. 1038 (1978) (emphasis added). A federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir.1983). It is well-settled that New York affords defendants the requisite corrective procedures.

See N.Y. Crim. Proc. L. § 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. (McKinney 1984 & Supp.1988) as being facially adequate"). Thus, Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with the opportunity to fully adjudicate these matters in state court.

In this case, petitioner moved for suppression of two pair of women's panties that were retrieved from his truck's glove compartment by the petitioner's mother and given to Sheriff's investigators. The truck was parked at the home of petitioner's mother. Resp't Ex. C at 39-40. Petitioner was afforded hearing on this matter, after which the county court issued a written decision denying suppression of this evidence on the basis that police had a reasonable, good faith belief that permission to search was given by a person with actual authority to do so, i.e., the petitioner's mother. Resp't Ex. C at 46. He then appealed the trial court's determination to the Appellate Division, and received discretionary review by the state's highest court. Contrary to petitioner's assertion, see Pet'r Reply at 2, it cannot be said that he was denied an opportunity for full and fair litigation of his Fourth Amendment claim in state court or that an unconscionable breakdown occurred in the process. As a result, petitioner is precluded from

raising this issue on habeas review. See, e.g., Plunkett v. Johnson, 828 F.2d 954, 956 (2d Cir.1987)(Habeas petitioner was not entitled to relief on ground that evidence obtained in unconstitutional search or seizure was introduced at his trial, where issue was fully litigated in suppression hearing and was subject to state appellate review).

### 2. Petitioner's Evidentiary Claim is Without Merit.

Petitioner argues that the trial court erred in admitting evidence of uncharged crimes, namely, evidence of petitioner's similar bad acts with the victim in Penn Yan, New York. Pet. ¶ 22(E).

The victim testified that on two or three occasions, petitioner drove her and her brother to help him clean a house in Penn Yan. The first incident she recalled was when petitioner told her brother Mark to steam clean the first floor, while petitioner went upstairs with the victim and locked them both inside an office. There, petitioner showed the victim an adult magazine and committed sexual acts with her. T. 75, 90, 126-28, 153, 154, 163, 191-91, 204. When Mark finished cleaning, he went upstairs and noticed that the door leading to the office was locked. He knocked on the door for one or two minutes until petitioner opened the door. When Mark entered the office, he saw his sister inside, standing in the bathroom. T. 193. A similar incident occurred thereafter when petitioner took the victim and her brother to clean

the house in Penn Yan. T. 195-96. The owner of the Penn Yan building testified that he engaged petitioner to remodel the downstairs apartment in September, 2003. T. 266.

The Appellate Division held that the admission of evidence of the uncharged crimes was relevant to a common scheme or plan and to provide background information[2], and that the probative value of the evidence outweighed any prejudicial impact. Leeson, 48 A.D.3d at 1295-96. The Court of Appeals also reviewed petitioner's contention, finding that,

> This testimony did not deprive defendant of a fair trial. "Evidence of a defendant's prior bad acts may be admissible when it is relevant to a material issue in the case other than defendant's criminal propensity . . . Where there is a proper nonpropensity purpose, the decision whether to admit [such] evidence . . . rests upon the trial court's discretionary balancing of probative value and unfair prejudice." People v Dorm, 12 N.Y.3d 16, 19 (2009). Here, as in Dorm, the uncharged acts involved the very same victim as the charged acts. In addition, the uncharged acts were claimed to have occurred in late August or early September 2003-during the very same time period as the crimes that defendant was accused of committing were alleged to have happened. As a result, the testimony relating to the two visits to Penn Yan "provided necessary background information on the nature of the relationship" between defendant and the victim, and "placed the charged conduct in context." Id. In short, this testimony was relevant for a purpose other than defendant's

---

[2] See People v. Molineux, 168 N.Y. 264 (1901) (evidence of uncharged crimes or bad acts may be admitted to the extent that it is relevant to show motive, intent, absence of mistake or accident, common scheme or plan, or identity of person on trial).

> criminal propensity, and its admission by the trial court was not an abuse of discretion.

Leeson, 12 N.Y.3d at 826.

Because the United States Supreme Court has declined to determine whether introduction of uncharged crimes would violate due process, the Appellate Division's rejection of petitioner's argument cannot be considered an unreasonable application of clearly established Supreme Court precedent. See Jones v. Conway, 442 F.Supp.2d 113 (S.D.N.Y.2006) (citing Estelle v. McGuire, 502 U.S. 62, n.5 (1991). Moreover, "[a] decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under Molineux constitutes an evidentiary ruling based on state law." Sierra v. Burge, 06 Civ. 14432, 2007 WL 4218926, *5 (S.D.N.Y. Nov. 30, 2007). As such, state court Molineux rulings are generally not cognizable on habeas review. See Roldan v. Artuz, 78 F.Supp.2d, 260, 276 (S.D.N.Y.2000). Rather, federal courts reviewing evidentiary matters may issue a writ of habeas corpus only if the petitioner demonstrates that the alleged evidentiary error violated a constitutional right and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998) (internal quotation omitted). "For the erroneous admission of other unfairly prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed

14

on the record without it.'" Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir.1992) and citing Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985) (evidence must be "crucial, critical, highly significant")).

New York law is "well settled that 'where the evidence of prior, uncharged criminal conduct has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality . . . the probative value of the evidence justifies its admission, notwithstanding the potential for incidental prejudice[.]'" People v. Lee, 284 A.D.2d 412 (2nd Dept.2001) (citation omitted). In People v. Dorm, 12 N.Y.3d at 19, the defendant had been charged with assaulting, imprisoning and stalking his former girlfriend. The New York Court of Appeals held that uncharged criminal conduct that the defendant had prevented the victim from leaving a club, her building lobby and a café was properly admitted to prove his motive to assault the victim, to provide background information on the nature of the relationship and to place the charge in context. Id.

Likewise, in the instant case, the evidence of petitioner's sexual acts with the victim in Penn Yan established the nature of his relationship with her, and it placed the charged crimes in context: petitioner actively sought opportunities to be alone with the victim in secluded areas, and used props, such as adult magazines and women's underwear, in the course of committing the

crimes. See, e.g., People v. Haidara, 65 A.D.3d 974 (1st Dept. 2009) (uncharged crimes were properly admitted to explain relationship between child victim and attacker, and place crimes in context).

Assuming, *arguendo*, the evidence was erroneously admitted, petitioner cannot demonstrate that it deprived him of a fair trial. As stated earlier, an error in admitting evidence may amount to constitutional error warranting habeas relief only if the erroneously admitted evidence was crucial, critical, or highly significant, "viewed objectively in light of the entire record." Collins, 755 F.2d at 19. Absent the evidence of petitioner's prior sexual acts with the victim in Penn Yan, the victim's testimony was nonetheless consistent with that of her mother and brother, and was corroborated by the recovery of very small-sized underwear taken from petitioner's glove compartment and two Polaroid cameras from his home. This claim must therefore be dismissed because petitioner has not set forth a constitutional infirmity arising from the admission of uncharged crimes.

### 3. Petitioner's Remaining Claims are Procedurally Barred.

Petitioner's Grounds (2) and (3), relating to the verdict and weight of the evidence, were raised in petitioner's appellate brief to the Fourth Department. They were not, however, fairly presented to the "highest state court from which a decision can be had" because petitioner did not seek review of those claims in the New York Court of Appeals. Daye v. Att'y General, 696 F.2d at 190

n.3. Likewise, petitioner's fourth ground for relief, which alleges a <u>Brady</u> violation, was never raised in any state forum. Accordingly, those claims are unexhausted. While petitioner has failed to exhaust these claims in state court, they can be deemed exhausted and procedurally barred because there is no state forum in which he may now raise the instant claims. See <u>Ramirez v. Att'y Genneral</u>, 280 F.3d 87, 94 (2d Cir.2001) (even where federal claim has not been fairly presented to the state courts, it will be deemed exhausted if it is subject to a procedural bar under state law).

Here, petitioner cannot return to state court because he has already taken the one direct appeal and one application for leave to appeal to the New York Court of appeals to which he is entitled. See <u>Grey v. Hoke</u>, 933 F.2d 117, 120-21 (2d Cir.1991); N.Y. Court R. 600.8 & 500.20. Moreover, he cannot raise his claims challenging the weight of the evidence and inconsistent verdict in a post-conviction motion, because those issues were previously decided on the merits on direct appeal. See N.Y. Crim. Proc. L. § 440.10(2)(a). Nor can he raise his <u>Brady</u> claim in a state motion for *vacatur* because the claim is one of record and should have been raised on direct appeal. See N.Y. Crim. Proc. L. § 440.10(2)(c). Because he no longer has remedies available in the state courts, petitioner's claims must be deemed exhausted and procedurally barred. See <u>Ramirez</u>, 280 F.3d at 94.

Petitioner's procedurally barred claims may be reviewed by this Court only if he can demonstrate either cause for the default and actual prejudice resulting therefrom, or that the failure to consider the claims will result in a fundamental miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 485, 496 (1986). In determining whether cause exists for a procedural default, the reviewing court must be careful to limit its inquiry to external factors that inhibited the petitioner or his counsel from asserting the claim. Murray, 477 U.S. at 492. A "fundamental miscarriage of justice" has been described as an "extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Sawyer v. Whitley, 505 U.S. 333, 338-39 (1992).

Petitioner does not address the issue of cause in his petition or his reply, nor has he offered any new evidence to support the miscarriage of justice exception. See Schlup v. Delo, 513 U.S. 298, 325 (1995). Petitioner is therefore not entitled to federal habeas review of his procedurally defaulted claims, and they are therefore dismissed.

**IV. Conclusion**

For the reasons stated above, Dale Leeson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253

(c)(2), the court declines the issue of certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir.2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   June 1, 2011
         Rochester, New York